THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ESTATE OF JOSEPH P. REESE,

                  Plaintiff,

   v.

SPEEDWAY INVESTMENTS, INC., et al.,

                  Defendants.

Civil No. 16-2785 (JS)

## OPINION

This matter is before the Court on the "Motion for Summary Judgment" ("motion") [Doc. No. 14] filed by plaintiff. The Court is called upon to address whether the decedent's son is responsible to pay a loan from his father after his father's death. The Court received defendants' opposition [Doc. No. 16] and plaintiff's reply [Doc. No. 19]. The Court exercises its discretion to decide the motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, plaintiff's motion is DENIED.[1]

## Background

The Court will begin with a summary of the background facts. As required in the present context, defendants will be given the

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to hear the case. [Doc. No. 9].

benefit of all reasonable inferences from the facts of record and the evidence will be viewed in the light most favorable to defendants. Plaintiff in this action is the executor of the Estate of Joseph P. Reese. See Compl. [Doc. No. 1]. Joseph P. Reese ("decedent") died on June 26, 2015. Pl.'s SOF ¶ 1. Decedent at all relevant times was a domiciliary of the State of New Jersey. Id. On August 18, 2015, decedent's Last Will and Testament ("will") was admitted to probate in Cape May County, New Jersey. Id. at ¶ 2.

Plaintiff brings this action against Patrick Reese ("Patrick"), Leslie Reese ("Leslie") and Speedway Investments, Inc. ("Speedway"). Id. at ¶ 13. Patrick is the son of decedent and Leslie is Patrick's wife. Speedway is a Pennsylvania corporation operating as Reese's Tavern and Pizzeria in Warminster, Pennsylvania. Id. at ¶ 3. Patrick is the sole shareholder, president and secretary of Speedway. Id. at ¶ 4.

The complaint alleges on August 1, 2015, defendants defaulted on loan payments due to the Estate and plaintiff now demands payment of the entire unpaid balance in the sum of $238,563.61 together with interest, late fees, costs of suit and counsel fees.[2] Compl. at ¶¶ 13, 14.

---

[2] Plaintiff brings this action pursuant to 28 U.S.C. § 1332 alleging complete diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs. Compl. at pg. 4.

On March 12, 2010, defendants executed the loan at issue in favor of decedent in the sum of $480,000 payable with interest over a period of ten years. Pl.'s SOF ¶ 6. Defendants contend the loan was a refinance of a previous debt Patrick owed to decedent (his father) and no additional debt was incurred through the March 12, 2010 loan.[3] Def.'s SOF ¶ 1. Under the terms of the loan, upon default, the entire unpaid amount of interest and principal would become immediately due and defendants would be liable for costs and reasonable attorney fees. Judgment Note, Pl.'s Ex. A.

Defendants allege they were relieved of their obligation under the loan pursuant to decedent's December 20, 2009 will and by a separate writing dated June 8, 2005. Answer at 5-6 [Doc. No. 3]. In the will, decedent directed that five of his seven children share equally in his estate. Last Will and Testament, Pl.'s Ex. 1 at ¶ 2. As for his remaining children, the third paragraph of the will states: "I have made no provision in my Will for my daughter, Tracy Reese Wible, or my son, Patrick Reese, as I have taken care of them sufficiently during my lifetime." Id. at ¶ 3. Defendants contend this paragraph refers to forgiveness of the subject loan and that Patrick was excluded from taking under the will because decedent had forgiven the loan. The June 8, 2005 writing refers to

---

[3] Plaintiff disputes this fact to an extent and the issue will be discussed more fully below. As required in this motion, however, the evidence will be viewed in the light most favorable to defendants.

a receipt of payment in the amount of $8,000 "towards the purchase of 2160 Old York Rd. and Reese's Pizza/Tavern" ("2005 receipt"). See Pl.'s SOF ¶ 20; June 8, 2005 Payment Receipt, Def.'s Ex. H. The 2005 receipt included a typed notation stating, "In the event of my death, any and all debts owed to me by my son Patrick Reese will be forgiven. This is for his years of service to me as an employee for over 26 years." June 8, 2005 Payment Receipt. The 2005 receipt was signed at the bottom by decedent and Patrick Reese.[4] Id.

Plaintiff filed the instant motion seeking judgment in its favor, arguing: 1) the notation on the 2005 receipt does not constitute forgiveness of the debt because defendants are unable to establish the elements of an inter vivos gift, and 2) the terms of decedent's will do not relieve defendants of their obligations under the loan. Defendants contend: 1) there remains a genuine issue of material fact as to whether decedent forgave defendants' obligations under the loan by way of an inter vivos gift, and 2) there exists a genuine issue of material fact as to decedent's intent under the will. For the reasons set forth below, although defendants cannot show all of the elements of a valid inter vivos gift, they have shown a genuine issue of material fact exists as

---

[4] For the purposes of this motion, plaintiff stipulates that the signature on the receipt is that of decedent. Pl.'s Br. at 3.

to decedent's probable intent in his will. Accordingly, plaintiff's motion for summary judgment is denied.

## Discussion

### A. Summary Judgment Standard

A court should grant summary judgment when the record demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party on an issue affecting the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine if a material fact exists a court must view the evidence in the light most favorable to the non-moving party. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to identify specific facts that contradict those of the moving party. See Anderson, 477 U.S. at 256. If the non-moving party comes forward with "specific facts showing that there is a genuine issue for trial," such that a verdict may be returned in his favor, summary

judgment must be denied. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A mere "scintilla of evidence," without more, does not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252.

## B. Inter Vivos Gift[5]

Plaintiff's argument is straightforward. It contends there is no fact question defendants defaulted on their March 12, 2010 debt and therefore summary judgment should be entered in its favor. Defendants do not deny they did not pay the debt. However, as an affirmative defense defendants allege the debt was forgiven by way of the notation on the 2005 receipt indicating Patrick's debts would be forgiven on decedent's death. See Answer at 6. In response, plaintiff contends the 2005 receipt does not operate to forgive the debt because defendants are unable to establish the elements of an inter vivos gift. Pl.'s Br. at 2. Specifically, plaintiff contends the 2005 receipt is not sufficient to establish a gift because there was no actual or symbolic delivery of the alleged gift and decedent never absolutely relinquished ownership and dominion over the alleged gift. Id. at 10. The Court rejects defendants' inter vivos gift defense.

---

[5] The parties do not dispute the will's provisions must be interpreted according to New Jersey law as decedent was a domiciliary of New Jersey "at all relevant times." See Compl.

"An inter vivos gift is, as its name suggests, a gift between the living." In re Estate of Link, 328 N.J. Super. 600, 604 (Ch. 1999). Even assuming a valid inter vivos gift may be effectuated by the death of the donor,[6] defendants fail to establish the requisite elements of an inter vivos gift. Three elements are required to establish a valid inter vivos gift: 1) actual or constructive delivery; 2) donative intent; and 3) acceptance. Bhagat v. Bhagat, 217 N.J. 22, 40 (2014) (citing Pascale v. Pascale, 113 N.J. 20, 29 (1988)). The New Jersey Supreme Court has "also recognized that the donor must absolutely and irrevocably relinquish 'ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given.'" Id. (quoting In re Dodge, 50 N.J. 192, 216 (1967)). Essentially, "[t]o constitute an inter vivos gift, not only must the donor have a clear intention to give a gift, but the gift must be completed." Jennings v. Cutler, 288 N.J. Super. 553, 562 (App. Div. 1996).

---

[6] The New Jersey Supreme Court has stated that gifts "intended to become operative only at death of the donor," as here, are ineffective because they are violative of the statute of wills. Howard Sav. Institution v. Kielb, 38 N.J. 186, 192 (1962); see also Estate of Cohen v. Cohen, Docket No. C-134-08, 2010 N.J. Super. Unpub. LEXIS 2300, *12-13 (Ch. Apr. 8, 2010) (a loan to be forgiven upon the death of the donor is an unenforceable gift because "it would be of a testamentary nature, and inconsistent with the requirements set forth in the statute of wills.").

"The burden of proving an inter vivos gift is on the party who asserts the claim." Bhagat, 217 N.J. at 41 (quoting Sadofski v. Williams, 60 N.J. 385, 395 n.3 (1972)). However, when "the transfer is from a parent to a child, the initial burden of proof on the party claiming a gift is slight," and such a transfer is presumed to be a gift. Id. (citing Metropolitan Life Ins. Co. v. Woolf, 136 N.J. Eq. 588, 592 (Ch. 1945)). Nonetheless, "[a]s the child matures and acquires experience and independence the presumption weakens and at last ceases." McDermott-Guber v. Estate of McDermott, Docket No. A-1210-15T3, 2017 N.J. Super. Unpub. LEXIS 1240, *13 (App. Div. May 19, 2017) (quoting Peppler v. Roffe, 122 N.J. Eq. 510, 516 (E. & A. 1937)).

While defendants have arguably established a genuine issue of material fact as to the elements of donative intent, acceptance and delivery, they cannot show that decedent absolutely and irrevocably relinquished ownership and dominion over the gift. This is true because it is undisputed the decedent continued to receive the loan payments throughout his lifetime.[7] Accordingly, defendants have failed to prove decedent conferred upon them a valid inter vivos gift in the form of forgiveness of the loan.

---

[7] Plaintiff does not dispute the elements of donative intent and acceptance are met. Plaintiff focuses its argument solely on the elements of delivery and relinquishment of dominion and control over the subject matter of the gift.

To show donative intent, defendants present the 2005 receipt and the affidavits of Bruce J. Young, Leslie Reese, Gail Schroeder and Shawn Reese indicating decedent expressed an intent to forgive the loan on his death.[8] Defendants also present evidence that Patrick signed the receipt and defendants stopped paying on the loan after decedent's death. Thus, defendants have presented evidence from which a factfinder could determine decedent possessed the requisite donative intent to convey an inter vivos gift and that defendants accepted the alleged gift.

However, plaintiff contends defendants cannot show the delivery element or that decedent absolutely relinquished ownership and dominion over the subject matter of the decedent's gift. As to the delivery element, the Court disagrees. As to the relinquishment of ownership and dominion, however, the Court agrees with plaintiff.

The delivery element can be difficult to show, particularly when, as here, the subject matter of the gift is intangible property. Lebitz-Freeman v. Lebitz, 353 N.J. Super. 432, 437 (App. Div. 2002) (citing Cziger v. Bernstein, 33 N.J. Super. 404 (App. Div. 1954)). Plaintiff contends, "New Jersey cases in which the enforceability of a promise to forgive a debt was in issue [are]

_____

[8] The specific contents of each affidavit will be discussed more fully below. For the purposes of this motion, plaintiff has stipulated to the accuracy of the contents of the affidavits. Pl.'s Br. at 4.

instructive as to what action on behalf of a donor is necessary to constitute effective delivery." Pl.'s Br. at 5. Specifically, plaintiff avers the cases in which forgiveness of a debt is at issue illustrate that neither the notation on the 2005 receipt nor decedent's oral statements to various individuals that he intended to forgive the debt upon his death can operate to forgive the debt. Id. at 6, 10. Plaintiff asserts voluntary forgiveness of a debt must be established by "an instrument as solemn as the instrument by which the debt was created," which plaintiff contends did not occur here. Id. To support this proposition, plaintiff cites Tulane v. Clifton, 47 N.J. Eq. 351 (Ch. 1891), Irwin v. Johnson, 36 N.J. Eq. 347 (E & A 1882), Landon v. Hutton, 50 N.J. Eq. 500 (Ch. 1893), and Isham v. Therasson, 30 A. 969 (Ch. 1895). While the cases plaintiff cites stand for the proposition that solemnity is required to forgive a debt, all of the cited cases are from the 19th century. Plaintiff cites no cases from the 20th or 21st centuries for this proposition, nor does it cite any current cases even referencing the solemnity requirement, particularly in analyzing the element of delivery or any of the other elements of an inter vivos gift.

Notably, more recent cases state that actual delivery is not a required element where "there can be no actual delivery." Bhagat, 217 N.J. at 41 (quoting Foster v. Reiss, 18 N.J. 41, 50 (1955)). Here, defendants have presented sufficient evidence from which it

could be determined delivery was impractical or that symbolic delivery of the gift occurred, such as decedent's signing of the 2005 receipt. However, even if there exists a genuine issue of material fact as to the intent, delivery and acceptance elements, the fact remains that defendants cannot show decedent absolutely relinquished ownership and dominion of the subject of the alleged gift because decedent continued to enjoy the payments and interest on the loan throughout his life.

The decision in Lebitz-Freeman v. Lebitz is instructive on the issue of relinquishment of dominion or control over intangible items. 353 N.J. Super. at 434. The plaintiff in Lebitz-Freeman claimed entitlement to certain securities which the decedent, the plaintiff's father, held in a brokerage account at the time of his death. Id. Prior to opening the brokerage account, the decedent informed his account representative that he was "concerned about plaintiff and wanted the securities in his brokerage account to pass to her in the event of his death." Id. To achieve this purpose, the decedent and the plaintiff signed forms creating a joint account with a right of survivorship. Id. Prior to his death, unbeknownst to the plaintiff, the decedent transferred the securities in the joint account to an individual account solely in his name. Id. at 435. On his death, the plaintiff brought suit against her father's estate, arguing that by creating a joint account with a right of survivorship, the decedent made an

irrevocable inter vivos gift to her, therefore, she was entitled to the contents of the brokerage account on the decedent's death. Id. at 435-36.

The court determined the creation of the joint brokerage account was not an inter vivos gift. Id. at 438. In making its determination, the court found it significant that the instrument creating the joint account allowed the decedent to collect the proceeds from the account, and in fact, the decedent continued to receive the income from the securities he deposited in the account and pay the taxes on that income. Id. 437-38. The court also noted that although the decedent expressed a desire that his daughter be "taken care of" on his death, he did not express an intent to give his daughter any of the income from the account while he was still alive. Id. at 438.

Just as in Lebitz-Freeman, the instrument creating the interest in the property, here the 2005 receipt, allowed decedent to continue to enjoy the payments and interest from the loan for his life. The receipt only indicates that forgiveness of the loan is to occur on the decedent's death. Decedent continued to receive the loan payments and interest until his death, just as the decedent in Lebitz-Freeman continued to enjoy the proceeds from the account for his life.

In his deposition testimony, Patrick stated the reason he prepared the notation on the 2005 receipt for his father to sign

was because decedent wanted Patrick to be "protected" after decedent's death, but "quite honestly, [decedent] wanted these payments while he was alive." Patrick Reese Dep., Def.'s Ex. C at 96:8-21. This testimony indicates decedent did not intend the forgiveness of the loan to be an inter vivos gift because decedent intended to continue to enjoy the payments and interest from the loan for his life.

Defendants contend there may be donative intent even where "the donor continues until his death to receive the income from the subject of the gift." Def.'s Br. at 2. For this proposition, defendant cites Seylaz v. Bennett, 5 N.J. 168, 173 (1950). However, the court in Seylaz does not explicitly state such a proposition, nor does it support the proposition. The court never addressed relinquishment of dominion or control, or any of the elements of an inter vivos gift. The court's analysis revolved around whether the decedent was subject to undue influence. Id.

Although the Court does not find defendants have presented a genuine issue of material fact as to whether the 2005 receipt represented a valid inter vivos gift, and thus is a valid defense to plaintiff's claim, the Court declines to enter summary judgment in favor of plaintiff.[9] Defendants have presented a genuine issue

---

[9] To be clear, because defendants cannot establish the relinquishment of ownership and dominion element, they cannot avail themselves of the inter vivos gift affirmative defense.

of material fact as to decedent's intent under the will, which is discussed more fully below.

### C. The Doctrine of Probable Intent

As a defense to plaintiff's claim, defendants contend decedent's will relieved them of any obligation under the loan. Answer at 5. Plaintiff avers it is undisputed the will does not, by its express terms, forgive the debt. Pl.'s Reply Br. at 9-10. Further, plaintiff asserts the will is not ambiguous in its terms, therefore, decedent's instructions must be carried out according to those terms. Id. Accordingly, plaintiff contends judgment should be entered in its favor. Id. Defendants argue the doctrine of probable intent must be applied to decedent's will because the 2005 receipt and the language of the will evidence decedent's intent to forgive the debt upon his death. Def.'s Br. at 8. The Court finds there is a genuine issue of material fact as to decedent's intent under the will. Accordingly, plaintiff's summary judgment motion will be denied.

"The intention of a testator as expressed in his will controls the legal effect of his dispositions, and the rules of construction . . . shall apply unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary." N.J.S.A. § 3B:3-33.1. The doctrine of probable intent is "a rule of construction or interpretation." In re Estate of Flood, 417 N.J. Super. 378, 382 (App. Div. 2010). The doctrine can take two

forms: interpretation and reformation. In re Trust of Nelson, Docket No. A-4004-15T1, 2018 N.J. Super. Lexis 50, *8-9 (App. Div. March 28, 2018). Interpretation involves ascertaining the "meaning of language already in the instrument." Id. at *9 (quoting Uniform Trust Code, cmt. § 415 (2000)). Reformation involves modification of the will "to correct mistakes, to fulfill an unexpressed intention, or to address circumstances that were unforeseen." Id. In cases of interpretation, the testator's probable intent need only be proved by a preponderance of the evidence. Bank of New York v. Black, 26 N.J. 276, 286 (1958); see also Trust of Nelson, 2018 N.J. Super. Lexis 50, *9-10 (stating that the preponderance of the evidence standard applies to interpretation while the clear and convincing standard applies to reformation).

The Appellate Division has noted New Jersey's liberal attitude concerning modifying wills to carry out a testator's probable intent by observing that "[a] clearly ascertained probable intent can be effectuated by the court even if it means the deletion from, substitution of or insertion in the verbiage used in the will." In re Tateo's Estate, 338 N.J. Super. 121, 127 (App. Div. 2001). The Court may even interpret a will "contrary to its primary signification" if necessary "to prevent the intention of the testator from being defeated by a mistaken use of language." Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 566 (1962); see also In re Estate of Branigan, 129 N.J. 324, 331-32 (1992) (noting

that under the doctrine of probable intent courts have "construed the language of a will in a fashion contrary to its literal, technical, or settled meaning").

In ascertaining a decedent's intent, the court is not "limited simply to searching out the probable meaning intended by the words and phrases in the will." In re Estate of Payne, 186 N.J. 324, 335 (2006) (quoting Engle v. Siegel, 74 N.J. 287, 291 (1977)). Evidence of the circumstances surrounding the document "is always admissible" to aid in interpretation of the document, even where the document "on its face is free from ambiguity." Trust of Nelson, 2018 N.J. Super. Lexis 50, *11 (quoting Atlantic N. Airlines v. Schwimmer, 12 N.J. 293, 301 (1953)); see also Estate of Payne, 186 N.J. at 335 (quoting Wilson v. Flowers, 58 N.J. 250, 260 (1971)) (Extrinsic evidence may "furnish[] information regarding the circumstances surrounding the testator [and] should be admitted to aid in ascertaining [the testator's] probable intent under the will."). Of course, "the testator's own expressions of his or her intent are highly relevant." Estate of Payne, 186 N.J. at 335 (citing Wilson, 58 N.J. at 262-63). When assessing a testator's probable intent, extrinsic evidence is relevant at two separate stages: to determine if there is ambiguity in the instrument and to resolve any such ambiguity. Trust of Nelson, 2018 N.J. Super. Lexis 50, *11 (citing Wilson, 58 N.J. at 263). "If an ambiguity exists, then resolution of the document's intended meaning is a

fact issue." Id. (citing Michaels v. Brookchester, Inc. 26 N.J. 327, 387-88 (1958)).

Once a testator's probable intent has been established, "the court may not refuse to effectuate that intent by indulging in a merely literal reading of the instrument." Estate of Payne, 186 N.J. at 335 (quoting Wilson, 58 N.J. at 260). Further, "[u]ndisputed intent should generally be implemented, despite the lack of ambiguity in the instrument." Inter Vivos Trust, 2012 N.J. Super. Unpub. LEXIS 421, *38.

Defendants assert even though the validity of the will is not contested, the decedent's intent in the will is contested, and thus, an inquiry must be made into decedent's probable intent. Def.'s Br. at 4. Plaintiff contends there is no ambiguity in the will, which must be present in order for the doctrine of probable intent to apply. Pl.'s Reply Br. at 10. Plaintiff maintains the will clearly excludes defendants from taking under the will and does not indicate forgiveness of the debt, and thus, the literal meaning of the will must be followed. Id.

Plaintiff misunderstands the circumstances in which the doctrine of probable intent may apply. As noted above, New Jersey has taken a liberal approach to reforming trusts and wills in order to carry out a testator's intent. Tateo's Estate, 338 N.J. at 127. Furthermore, a testator's intent should be implemented, even where the instrument is not ambiguous on its face. Trust of Nelson, 2018

N.J. Super. Lexis 50, *11 (quoting Schwimmer, 12 N.J. at 301).
Here, decedent's will is not clear as to decedent's intent. A
question of fact exists as to whether decedent intended to
incorporate the 2005 loan forgiveness promise into the will. This
is a plausible reading of the will because decedent wrote he took
care of Patrick sufficiently during his lifetime. The fact the
decedent did not specifically refer to loan forgiveness does not
necessarily mean he did not intend to give effect to his earlier
promise to Patrick.

In the recent case of In re Trust of Nelson, the court ruled
that a trial court is permitted to look beyond the plain language
of a trust in order to ascertain the decedent's intended meaning.[10]
2018 N.J. Super. Lexis 50, at *1. The decedent in Trust of Nelson
left property in a trust to her "grandchildren." Id. at *2. The
trustee sought a declaratory judgment regarding the interpretation
of the term "grandchildren" as it was used in the trust. Id. The
trustee put forth extrinsic evidence that the decedent intended
only the children of her sons, who followed decedent's religious
beliefs, to share in the trust. Id. at *3-*4. The trustee proffered
evidence indicating that because the decedent had a strained

---

[10] Although Trust of Nelson addresses whether there is
ambiguity in the language of a trust, as opposed to a will, the
court's analysis revolved around the doctrine of probable intent
as it is applied to both trusts and wills. Accordingly, the case
is instructive here.

relationship with her daughter, the decedent did not consider her daughter's children to be her grandchildren, and thus, did not intend for them to share in the trust. Id. The trial court declined to consider the extrinsic evidence, determining that the trust must be construed according to its plain, unambiguous terms. Id. at *4. The trial court cited to In re Estate of Gabrellian, 372 N.J. Super. 432, 443 (App. Div. 2004), which states that the doctrine of probable intent "is not applicable where the documents are clear on their face and there is no failure of any bequest or provision." Id. The trial judge acknowledged that if he were permitted to examine evidence beyond the four corners of the document, there would have been a genuine issue of material fact precluding summary judgment. Id.

The court reversed the trial court's entry of summary judgment and remanded for a new trial finding that the trial court improperly "confined itself to the words found within the four corners of the trust." Id. at *1. Applying the doctrine of probable intent, the court stated that a trial court may look beyond the apparently plain language of a trust and consider extrinsic evidence of the decedent's intent in order to discern whether an ambiguity exists and how to resolve any such ambiguity. Id. at *11-*13. The court explicitly declined to follow Estate of Gabrellian, finding that the trustee should have been permitted to produce, and the trial court should have considered, extrinsic

evidence regarding the decedent's probable intent when it came to the meaning of the term "grandchildren." Id. at *13. The court determined that the trustee had proffered extrinsic evidence that the term "grandchildren" as it was used in the trust was ambiguous. Id. at *16. Having established ambiguity, the court remanded the case so the trustee could present extrinsic evidence to show the trust should be interpreted to give effect to its meaning of the term "grandchildren." Id.

Here, similar to the trustee in Trust of Nelson, defendants have produced evidence indicating ambiguity in decedent's will. Defendants have presented extrinsic evidence from which a factfinder could reasonably decide the decedent was referring to forgiveness of defendants' debt when he stated in the will that he had adequately provided for Patrick during decedent's lifetime. Defendants present the 2005 receipt as evidence decedent intended to forgive the debt on his death. Defendants contend they were excluded from the will because the 2005 receipt forgave the debt on decedent's death. The affidavit of Bruce J. Young indicates he saw the typed notation on the receipt and he witnessed decedent and Patrick sign the receipt on June 8, 2005. Young Affidavit, Pl.'s Ex. J (Oct. 22, 2015). Young also stated he heard decedent state "on several occasions" he intended all debts owed to him by Patrick would be forgiven on decedent's death. Id. The affidavit of Leslie Reese, Patrick's wife, indicates decedent told her on

May 30, 2015 that if anything happened to him, Leslie and Patrick would be "taken care of" and "the loan on the bar would be forgiven." Leslie Reese Affidavit, Pl.'s Ex. I (Oct. 5, 2015). Gail Schroeder, an employee of decedent, stated that decedent told her Patrick was "buying the bars" and decedent "made a deal with [Patrick] to only make payments while [decedent] was alive." Schroeder Affidavit, Pl.'s Ex. K (Oct. 31, 2015). Schroeder indicated decedent informed her of the deal on multiple additional occasions throughout 2006 and 2007. Id. Shawn Reese, Patrick Reese's brother and decedent's son, testified he "personally heard on more than one occasion" decedent state he intended to forgive Patrick for "any debt owed" to decedent for the purchase of Reese's Tavern in Warminster, Pennsylvania on decedent's death. Shawn Reese Affidavit, Pl.'s Ex. L (Oct. 15, 2015). The 2005 receipt and the affidavits present evidence that decedent intended to forgive the loan on his death.

Additional evidence indicating decedent's intent to forgive the loan is that it appears from the will decedent intended to treat his children equally, and thus, he did not intend for Patrick to receive nothing on his death. In In re Estate of Passoff, the court voided a provision in a testator's will that expressly forgave a debt owed to the testator by one of her daughters. 359 N.J. Super. 112, 122 (Ch. 2002). The court invoked the doctrine of probable intent in order to delete the debt forgiveness clause

because the estate was insolvent and the court determined giving effect to the clause would benefit one child to the detriment of the others. Id. at 121-22. The court viewed the fact the decedent divided her estate into equal shares for each of her children and that she had offset certain lifetime gifts to some by decreasing their share under the will as an indication of her intent to treat her children equally. Id. Despite a lack of ambiguity in the will, the Court determined the decedent's intent was to treat her children equally and reformed the will to carry out that intent. Id.

Here, there is similar evidence that decedent intended to treat his children equally on his death. Just as in Estate of Passoff, decedent divided his estate equally among his children and offset lifetime gifts to Tracy by excluding her from taking under the will. It is undisputed that decedent gave Tracy a house, renovations and money during decedent's lifetime. Considering this evidence, a factfinder could conclude decedent did not intend for Patrick to receive nothing on decedent's death, but actually wished for Patrick to receive benefits similar to those of his siblings.

When considering the evidence proffered by defendants along with their proposed interpretation of the will, there is sufficient evidence of an ambiguity as to decedent's intent. Accordingly, there exists a genuine issue of material fact as to decedent's intent in the will and summary judgment must be denied. See Trust

of Nelson, 2018 N.J. Super. Lexis 50, *11 (citing Michaels, 26 N.J. at 387-88) ("If an ambiguity exists, then resolution of the document's intended meaning is a fact issue.").

Plaintiff's contention that neither the receipt nor the will can operate to forgive the debt because the debt was not in existence at the time the receipt and will were created is of no consequence in the context of this summary judgment motion. Pl.'s Br. at 3, 11-12. Plaintiff points out the receipt was signed in 2005 and the will in 2009, both prior to the loan documents which were signed on March 12, 2010. Id. Accordingly, plaintiff contends these documents cannot act to forgive a debt that was not yet in existence. Id. However, according to defendants, the 2012 loan was merely a refinance of previous debts in existence at the time the receipt and will were signed. Def.'s Br. at 7. When asked about this subject at his deposition, William Casey, Esq., the attorney who prepared the loan documents declined to call it a refinance, but referred to it as "a settlement" of preexisting debts. Casey Dep., Def.'s Ex. A, at 76:17-81:9. However, the guarantee agreement entered into in conjunction with the other loan documents signed in 2012 refers to the transaction as a refinance. Guarantee Agreement, Pl.'s Ex. E. Further, it is plain Patrick was indebted to decedent for the purchase of Reese's Pizza and Tavern prior to the signing of the 2005 receipt and the 2009 will. The 2005 receipt was a receipt indicating Patrick had made payment in the amount of $8,000 to decedent for the purchase of "Reese's Pizza/Tavern." See

June 8, 2005 Payment Receipt. The loan at issue here, entered into in 2010, was also for the purchase of Reese's Tavern and Pizzeria, implying the 2010 loan was a refinance of a previous loan to Patrick to purchase Reese's Tavern and Pizzeria. See Judgment Note Pl.'s Ex. A. Construing the evidence in the light most favorable to defendants, the 2012 loan was merely a refinance of a previous debt, thus, the debt incurred in 2012 was merely a continuation of the debt that is reflected in the 2005 receipt and 2009 will. Further, the receipt is not specific and merely states that "any and all debt" owed by Patrick will be forgiven on decedent's death. Accordingly, even if the 2010 loan was not a refinance of previous loans in existence at the time the receipt and will were signed, there still remains a genuine issue of material fact as to whether decedent intended to forgive "any and all" debts owed, including future debts Patrick would incur.

Plaintiff also points out that neither the receipt nor the will refers to Speedway or Leslie Reese, therefore, even if the loan were forgiven as to Patrick, the debt still remains as to Leslie and Speedway. Pl.'s Br. at 3, 11-12. Defendants contend that it can be inferred that decedent's intent was to release Leslie, "who had no involvement in the business." Def.'s Br. at 10. Defendants point to decedent's statement to Leslie that she would be "taken care of" on decedent's death as clear evidence of decedent's intent to relieve Leslie from any obligation under the loan. Id. Additionally, defendants point out Speedway is solely

owned and controlled by Patrick Reese, therefore "it can be reasonably assumed" that decedent intended to include both his daughter-in-law and Speedway in the loan forgiveness. Id. at 11.

Defendants have produced sufficient evidence from which a factfinder could determine decedent intended to include Leslie and Speedway in any forgiveness of the loan on his death. Leslie testified that decedent told her she would be "taken care of" on his death and the "loan on the bar" would be forgiven. Affidavit of Leslie Reese. A factfinder could determine from the evidence presented that decedent's probable intent in the will was to forgive the loan as to Leslie as well. Accordingly, a genuine issue of fact remains as to decedent's intent and summary judgment must be denied as to Leslie Reese.

Further, Speedway is solely owned by Patrick. Accordingly, if it is decided that decedent intended to forgive the loan as to Patrick but not as to Speedway, Patrick would still be responsible for the loan as the sole owner of Speedway. Once decedent's probable intent has been established, that intent must be given effect. If it is decided that decedent intended to forgive the loan as to Patrick, it would not be giving effect to decedent's intent to continue to hold Patrick responsible as the sole owner of Speedway. Accordingly, there remains a genuine issue of material fact as to whether decedent intended to include Leslie and Speedway in any forgiveness of the loan and summary judgment is inappropriate.

Moreover, "[i]t is well-established that state-of-mind issues are frequently viewed as not suited for disposition through the pretrial device of summary judgment, and must instead await plenary testimony at a trial and credibility assessments by the factfinder." McDermott-Guber, 2017 N.J. Super. Unpub. LEXIS 1240, *11 (citing Mayo, Lynch & Assocs., Inc., v. Pollack, 351 N.J. Super. 486, 500 (App. Div. 2002)); See also Ruvolo v. Am. Casualty Co., 39 N.J. 490, 500 (1963) (stating a court should hesitate to grant summary judgment when it must "resolve questions of intent and mental capacity"). Here, the factfinder must resolve the question of decedent's probable intent in his will. Accordingly, disposition through summary judgment is not appropriate unless it is clear there is no genuine issue of material fact or "the evidence is so one-sided that one party must prevail as a matter of law." Id. at *12 (citations omitted). Because the issue is not "so one-sided," summary judgment is not appropriate, and thus, plaintiff's motion is denied.

## Conclusion

For the reasons discussed above, plaintiff's summary judgment motion will be denied. An appropriate accompanying Order will be entered.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: May 8, 2018